GEORGE D. MATTISON, APPELLEE, v. CHICAGO, ROCK ISLAND & PACIFIC RAILROAD COMPANY, APPELLANT.

FILED NOVEMBER 8, 1894.  No. 5729.

Parol evidence is incompetent to prove a contemporaneous oral agreement by which it is sought to change or alter the terms of a written contract and the result of which

39

would be to change the effect of the written contract in a material portion and to insert or read into it a condition or reservation not contained in it, or implied by its terms.

APPEAL from the district court of Cass county. Heard below before CHAPMAN, J.

*W. F. Evans* and *C. S. Montgomery*, for appellant.

*Beeson & Root, contra.*

See opinion for citation of authorities.

HARRISON, J.

September 18, 1891, appellee filed a petition in the district court of Cass county, asking a decree compelling a specific performance by the appellant, the railway company, of an alleged verbal contract stated to have been made on or about the 1st of August, 1890, by the terms of which the petition alleges (we here insert what is conceded by the parties to be a substantially correct statement of the issues joined by the pleadings): "The plaintiff was to convey to the defendant a strip of land 150 feet wide, over and across said northeast quarter of said section 24, for right of way for said railway, and the defendant, in consideration of such conveyance, agreed to pay plaintiff therefor the sum of $500 in cash, and also to construct and maintain in good repair farm crossings across their said line of railway and right of way wherever plaintiff might designate upon said northeast quarter of said section 24." It was alleged in the petition that the plaintiff was the owner of said northeast quarter of said section 24, across which the defendant had located and constructed diagonally from near the northeast corner to near the southwest corner its line of railway, and it was after the location of said line of railway, but before and with reference to the construction thereof, that the contract in question was alleged to

have been made.   It was further alleged that the plaintiff had performed the contract on his part; and that "the defendant had entered upon said land and constructed its line of railway across the same upon the land so as aforesaid conveyed to it by plaintiff."   It was also alleged that the plaintiff had designated a point for a farm crossing over the said railway and right of way and that he had demanded that the same be constructed and maintained by the defendant, but that defendant had utterly refused "to put in or permit to be put in a crossing at the location designated by the plaintiff as aforesaid on said railway."

The defendant by its answer admitted its corporate capacity; that it was the owner of the railway in question; that the plaintiff was the owner of the lands described, except the portion upon which the railway was constructed, and which had been conveyed by the plaintiff to the defendant, but specifically denied "that it at any time ever promised to or agreed with the plaintiff that it would construct at any place on the road described in plaintiff's petition, or any part thereof, or at any other place, a crossing over said railroad."   Further answering the defendant alleged "that during the year 1890 the defendant located its railway over and across the northeast quarter of section 24, township 12 north, of range 10 east, in Cass county, Nebraska; that thereafter, and on the 20th day of August, 1890, the plaintiff herein, George D. Mattison, and Laura Mattison, his wife, sold, in consideration of $500, and by deed of general warranty conveyed unto this defendant all that part of said northeast quarter, described as follows: [Then followed the description of a strip of land 150 feet wide, running through the said quarter section diagonally, as aforesaid, and upon which the railway was constructed, 50 feet lying north of the center of the railway and 100 feet south]; that thereafter the defendant entered upon said strip of land hereinbefore described and conveyed by said George D. Mattison, plaintiff, and his wife, Laura Mattison,

to the defendant as aforesaid and built and constructed its railroad thereon, and has at all times since, and is now operating the same thereover." The defendant further alleged "that thereafter, and on the 31st day of October, 1890, the plaintiff George D. Mattison and his wife, Laura Mattison, in consideration of the sum of $370.50, sold and by a deed of general warranty conveyed to the defendant" an additional strip of land 150 feet wide, adjoining and lying immediately north of the 150-foot strip, across the southwest quarter of the northeast quarter of said section of land, and that at the time defendant's answer was filed it was, and at all times since the conveyance of said strip of land had been, the absolute and unqualified owner of said strips of land. Copies of the said deeds of conveyance of said strips of land were attached to the answer and made a part thereof.

In reply the plaintiff denied "that the sum of $500 was the sole consideration moving to plaintiff for the execution of the deed described in said answer as 'Exhibit A,' but avers the fact to be that a crossing was to be granted to plaintiff as stated in his petition, in consideration of said conveyance, but that it was not set out in said instrument." "Exhibit A," referred to, is the deed of the first strip above mentioned and referred to in answer. Further replying the plaintiff denied that the defendant was "the absolute and unqualified owner of the strip of land described in its answer," but averred "the truth to be that by virtue of the contract between the parties to this suit, as described in the petition, this plaintiff has an easement of a farm crossing over and across said land and railway as set out in the petition."

Exhibit A, attached to the answer, which was one of the deeds executed by appellee and his wife and delivered to the company, reads as follows:

"Know all men by these presents, that we, George D. Mattison and Laura Mattison, husband and wife, of Cass

county and state of Nebraska, in consideration of the sum of five hundred dollars, in hand paid by the Chicago, Rock Island & Pacific Railway Company, a corporation, do hereby sell and convey unto the said railway company, its successors and assigns, the following described premises, situated in the county of Cass and state of Nebraska, to-wit: A strip of land one hundred and fifty feet wide, of which the center line of the route and line of the Chicago, Rock Island & Pacific Railway Company, as the same is now surveyed, staked, and located, is the center, being 50 feet on the north and 100 feet on south side of the center line of said route, over, across, and through the following described tracts of land, as said route and line of said railway passes through the same, to-wit: The northeast quarter of section 24, in township 12 north, of range 10 east, in Cass county, Nebraska; said strip of land is 150 feet wide, being 50 feet on the north and 100 feet wide on the south side of said center line of said railway, as now surveyed, staked, and located by the engineers of said railway company, over, across, and through said real estate, together with all such additional or extra ground out of the lands of the said grantor or grantors, adjoining such strip of land hereby conveyed, as said company may at any time require, to be paid for by said company at the price per acre paid for said strip. And said railway company may, through its agents, employes, servants, or contractors, encroach upon the adjoining lands outside of the limits above mentioned to which said grantor or grantors have title or possession for the purpose of building or constructing its road-bed and railroad and for completing and trimming its cuts and fills, and for all other purposes for the building, constructing, or maintaining its road-bed, or of maintaining its railroad. And said railway company, its successors or assigns, may, at any and all times between the first day of November and the fifteenth day of March of each year, erect and maintain snow fences on the lands now owned by said

grantor or grantors, not more than two hundred feet north or west of the center line of said railroad, and may remove such snow fences at pleasure; but shall only suffer them to remain on the lands of such grantor or grantors during the time herein limited. And we hereby covenant with said railway company that we hold said premises by good and perfect title; that we have good right and lawful authority to sell and convey the same; that they are free and clear of all liens and incumbrances whatsoever; and we covenant to warrant and defend the said premises against the lawful claims of all persons whomsoever. And the said Laura Mattison hereby relinquishes her right of dower in and to the above described premises.

"Signed this 20th day of August, A. D. 1890.

"GEO. D. MATTISON.
"LAURA MATTISON.

"In presence of
  "WM. L. WELLS."

Exhibit B, the second deed, was in form the same as Exhibit A, and differed only in that it conveyed another and additional strip of land and recited a consideration of "three hundred and seventy-five and $\frac{50}{100}$," and was executed of a subsequent date.

Before entering into the trial of the case, counsel for appellant filed the following motion: "Comes now the defendant and moves this honorable court for judgment in said case in its favor, for a dismissal of said action at plaintiff's cost upon the pleadings, upon the grounds that it appears from the pleadings that the plaintiff is not entitled to recover in this action any judgment against the defendant." This motion was submitted and overruled, and the case was afterwards tried upon its merits to the court. As a result of the trial a judgment was entered in favor of appellee conforming to the findings of the court and decreeing a specific performance of the alleged oral contract to construct and maintain a crossing over defendant's line

of road, at a point indicated in the decree.   From this decree the company has perfected an appeal to this court.

The main contention of appellant is that if such an oral contract existed between the parties as claimed by appellee and upon which this action and the decree accorded him therein were based, prior to the execution of the deed or deeds, it became merged in the deeds, that the final contracts are conclusive of all the prior agreements or conversations, and that evidence of the parol agreement was incompetent and could not be received or allowed to contradict, vary, or modify the contents of the written instruments,—in this case the deeds.   The general rule on this subject is thus stated in 1 Greenleaf, Evidence, sec. 275: "Parol contemporaneous evidence is inadmissible to contradict or vary the terms of a valid written instrument;" and this court in the case of *Delaney v. Linder*, 22 Neb., 274, announced it as follows: "When a contract has been reduced to writing, as a general rule of law verbal evidence is not allowed to be given of what passed between the parties either before the written instrument was made or during the time of its preparation, so as to add to or subtract from or in any manner to vary or qualify the written contract."   But general rules of law are, as are all general rules governing or pertaining to the conduct or transactions of men, subject to exceptions, and it is upon the belief that his position or situation, as disclosed in this case, brings him within a true and fair exception to the above rule, that the appellee relied in applying to the court for its aid in enforcing the alleged oral promise on the part of appellant, which he claims was a part of the consideration for the conveyance by him of the right of way over his land.   We have been referred by counsel for appellee to the case of *Donisthorpe v. Fremont, E. & M. V. R. Co.*, 30 Neb., 142, as supporting his position in the case at bar. The rule stated in the case cited is that parol evidence is admissible to explain or show the purpose for which a deed

was given. The parol testimony was introduced to show
what was intended or meant by the parties by the words of
the grant of the right of way to the company by the Don-
isthorpes over their property. This is not what it is sought
to do by the evidence in the case at bar, and we do not think
the case cited can be said to be in point, except in so far as
it establishes that exceptions to the general rule will be
allowed. It has been announced by the courts in some
cases that "parol evidence is admissible as to a distinct
and collateral agreement, and not part of the contract em-
bodied in the writing, but such evidence must relate to
some matter distinct from that contained in the writing."
(*Parcell v. Grosser*, 1 Atl. Rep. [Pa.], 909; *Thompson v.
Libbey*, 26 N. W. Rep. [Minn.], 1; *Gruffam v. Pierce*, 9
N. E. Rep. [Mass.], 819.) But, on the other hand, it is
said that oral evidence cannot be received in the absence of
fraud or mistake, to show that parties to a written contract
stipulated, before the execution of the writing, for some-
thing contrary to what is there expressed, or to what is
legally implied. (*Hopkins v. St. Louis & S. F. R. Co.*, 29
Kan., 544.) By the evidence of the parol agreement in
the case at bar, it was not the object to show a separate,
distinct contract from the one contained in the deed, but to
show one by which the terms of the deed, as the contract
of the parties would be changed by reading into it a reser-
vation or condition by which the appellee would be given
a right of a permanent crossing over the right of way of
the appellant, not showing the purpose for which the deed
was made, but changing the terms of the grant of the right
of way, from a full and complete conveyance to one upon
which was imposed the servitude of the appellee's right
of crossing, thus varying and modifying it in a very
material portion. This, we think, was clearly in direct
violation of the rule, not only in its terms, but in the rea-
sons upon which it is founded. The evidence was inad-
missible and incompetent, and the contract resting, as it

did, in parol, could not be allowed to alter the terms and conditions of the deed. (See *Cornell v. St. Louis, K. & A. R. Co.*, 25 Kan., 613; *Tisloe v. Graeter*, 1 Blackf. [Ind.], 353; *Kellogg v. Richards*, 14 Wend. [N. Y.], 116; *Stull v. Thompson*, 25 Atl. Rep. [Pa.], 890; *Conant v. National State Bank*, 22 N. E. Rep. [Ind.], 250; *Shenandoah V. R. Co. v. Dunlop*, 10 S. E. Rep. [Va.], 239; *Mead v. Norfolk & W. R. Co.*, 15 S. E. Rep. [Va.], 497; *Kelley v. Palmer*, 42 Neb., 423, and authorities cited.) The judgment of the district court is reversed and a decree ordered in this court dismissing plaintiff's action.

REVERSED AND DISMISSED.