265 P.2d 341

**HART et al.**

v.

**NORTHEASTERN N. M. FAIR ASS'N.**

No. 5669.

Supreme Court of New Mexico.

Dec. 8, 1953.

Rehearing Denied Jan. 26, 1954.

H. A. Kiker, Alfred P. Whittaker, Henry A. Kiker, Jr., Santa Fe, for appellants.

Crampton, Robertson & Skinner, Raton, for appellee.

SWOPE, District Judge.

This suit was brought by the plaintiffs to compel specific performance by the defendant of a condition subsequent set forth in a deed. Judgment was rendered in favor of the defendant, and the plaintiffs appealed.

The trial court found the facts to be as follows:

"I  The Plaintiff Ruth Morrow Hart was at the time of the institution of this action, a resident of Colfax County, New Mexico, and is now a resident of Las Animas County, Colorado. The Plaintiff, Mary Morrow Smith, was formerly Mary Morrow Adams, and is a resident of Las Animas County, Colorado.

"II  The Defendant, Northeastern New Mexico Fair Association, is a corporation organized and existing under the laws of the State of New Mexico. It was incorporated in the year 1944 for the objects and purposes, among others, of operating and conducting fairs, including stock shows, exhibitions, rodeos, contests and races.

"III  For many years the father of the Plaintiffs resided at Raton, New Mexico, and took a very great interest in an annual fair conducted in the city of Raton for the purpose of the exhibition of the products of the soil and other products of Colfax County, and Plaintiffs, in selling said real estate for less than its market value to the Defendant, had in mind and intended that said land should be used for the purpose of again conducting in said city, fairs of the same nature as those in which Plaintiffs' father had taken a lively interest as a community enterprise.

"IV  In the year 1944 the Defendant acquired by purchase a tract of land called the Turner Tract, containing 110 acres, more or less, located in Colfax County, New Mexico, and lying a short distance south of the City of Raton, New Mexico, and the Defendant is still the owner of said Turner Tract.

"V  On the 13th day of September, 1945, the Plaintiffs executed and delivered to the Defendant a Warranty Deed by which they conveyed to the Defendant a tract of land and real estate containing 32.6 acres, more or less, in Colfax County, New Mexico, adjoining and lying immediately north of the Turner Tract. The tract so conveyed by the Plaintiffs to Defendant was frequently referred to in the testimony as the Morrow Tract, and is sometimes so referred to in these findings. A true copy of said Deed is attached to the Amended Complaint in this action and marked Exhibit A.

"VI    Said deed, among other things, contained a paragraph reading as follows:

" 'The land above described shall be used only for fair purposes. In the event that within ten years from the date of this deed said land shall be used for any other purpose, then the parties of the first part shall have the privilege of repurchasing said land at a price of Twenty-five Dollars ($25.00) per acre.'

"VII    The said Deed was actually prepared by the attorney for the Defendant, but the above mentioned paragraph concerning the purposes for which the premises should be used was particularly requested by the Plaintiffs, and the language of that paragraph was chosen and requested by the Plaintiffs and was inserted in the Deed by the attorney preparing the same only at the request of the Plaintiffs.

"VIII    The purchase price paid by the Defendant to the Plaintiffs for the said Morrow Tract was the sum of $50.00 per acre.

"IX    At and prior to Defendant's purchase of the Morrow Tract, the Defendant was attempting to find a suitable location for the construction of a race track to be used for horse racing. Although the Turner Tract was large enough in area to accommodate such a track, the contour of the land and other similar conditions proved to be such that in the judgment of the Defendant a suitable race track could not be constructed wholly within the Turner Tract.    The primary purpose of the Defendant in acquiring the Morrow Tract was to obtain an additional adjoining area so that the contemplated race track might be constructed partly on the Morrow Tract and partly on the Turner Tract, and this purpose was known to the Plaintiffs at and prior to the time of the execution and delivery of the Deed.

"X    At and prior to the time of the execution of the Deed it was contemplated by all the parties hereto that the two tracts of land, that is to say, the Morrow Tract and the Turner Tract combined, would, in effect, be used jointly and as a unit.

"XI    Shortly after the conveyance of the Morrow Tract to the Defendant by the Plaintiffs, the Defendant constructed a three-quarter mile race track, the northerly portion (approximately one-third) of which is located on the Morrow Tract and the remainder of which is located on the Turner Tract.    The Defendant also constructed other valuable improvements, including a grandstand, barns, stables, office buildings and other miscellaneous

structures, all appropriately located with reference to the location of the race track. Most of the improvements are physically located on the Turner Tract, but there are located on the Morrow Tract, itself, eight barns, a feed storeroom, a warehouse, a water tank, a bath house, a blacksmith shop and a six-inch water line.

"XII  In the summer of 1946 the Defendant conducted at its race track a number of horse races and horse race meetings, all duly licensed by the New Mexico State Racing Commission.  Similar horse races and horse race meetings have been conducted by the Defendant at its race track every year thereafter.  On each racing day several of the races have been what is known as claiming races.  A claiming race is a race so arranged that, subject to definite regulations, each horse entered in the race is in effect offered for sale and may be claimed or purchased at a specified price by any horseman who complies with the requirements of the regulations.

"XIII  The said Turner Tract and the said Morrow Tract, combined, have also been used for the following specific purposes:

"(a) On May 1, 1945, without compensation, the Defendant gave a long-term lease to Levi L. Turner, Ed C.

Johnson and Alvin M. Stockton as trustees for Northeastern New Mexico Hereford Breeders Association covering a parcel of approximately four acres lying in the northeast corner of the Turner Tract in order that the same might be used for the purpose of conducting livestock exhibitions and shows and sales; and said Hereford Breeders Association, using building materials donated to it by the Defendant, constructed on said parcel a substantial barn, pavilion and sales ring for the purpose of conducting such exhibitions, shows and sales; and said parcel and the improvements thereon have in fact been regularly and actively used for that purpose.

"(b) In the year 1946, the Defendant, without charge, permitted said property to be used for the conducting of a circus, the actual site being on a portion of the Turner Tract.

"(c) In the summer of the year 1947, the Defendant on three different nights conducted a rodeo in front of the grandstand and within the race track enclosure.

"(d) In the year 1947, a quarter horse sale was conducted by Charles Springer Cattle Company within the race track enclosure.

"(e) In the year 1947, A. M. Van Dyke conducted a bull sale, making

use of a number of the barns, stables and other facilities of the Defendant.

"(f) On various occasions prior to June, 1949, the Defendant permitted said property to be used without compensation for various functions and projects and entertainments performed and sponsored by and for the benefit of Boy Scouts of America, including among others, a benefit entertainment given by the Koshare Indian Dancers from La Junta, Colorado.

"XIV The Plaintiffs have, at all times, known the manner in which the Turner Tract and the Morrow Tract have been used, and the Plaintiffs did not at any time prior to June 23, 1949, make any protest or otherwise indicate any disapproval concerning the use being made of said property and did not indicate in any manner prior to June 23, 1949, that they considered that the use being made of said land constituted a violation of the terms and provisions of the Deed.

"XV During the entire period prior to June 23, 1949, the Defendant was continuously and consistently carrying on its program of developing and improving its property and constructing extensive and valuable improvements both on the Morrow Tract and on the Turner Tract, particularly in conjunction with the grandstand and race track. During all this period the Plaintiffs were aware of the improvements so being constructed.

"XVI The Court finds that the Plaintiffs delayed for an unreasonable length of time before advising the Defendant of their view that the use being made of the property constituted a violation of the provisions of the Deed.

"XVII The actual cost of race track and the railings was in excess of $11,500. The actual cost of the grandstand has been in excess of $73,500. The actual cost of the improvements (other than the race track, itself) actually constructed on the Morrow Tract prior to June 23, 1949, was in excess of $40,000. The total aggregate cost of all of the improvements has been in excess of $284,000.

"XVIII If the Plaintiffs should be permitted to repurchase the Morrow Tract, the Defendant would be required to change entirely the location of its race track, and this in turn would necessitate the moving of the grandstand and other improvements presently located with reference to the track. The Defendant would also be required to move the other improvements physically located upon the Morrow Tract. The direct cost to the Defendant for moving the race track, grandstand

and other improvements is not capable of exact ascertainment, but the Court finds that such cost would amount at least to several hundred thousand dollars. The loss which would thus be suffered by the Defendant is altogether disproportionate to any benefit which might be derived by the Plaintiffs.

"XIX The Court finds that the uses to which the Morrow Tract and the Turner Tract have been put constitute 'fair purposes,' and that neither of said tracts has been used for any other purpose than 'fair purposes.'"

■ The plaintiffs assign numerous errors principally on account of the trial court's action in adopting findings which were adverse to those submitted by them. However, the evidence supports the findings made by the trial court and its action in refusing to adopt the plaintiffs' theory of the case and their requested findings of fact, which it had covered by adverse findings, was not error. Libby v. De Baca, 51 N.M. 95, 179 P.2d 263. It should also be noted in connection with some of the errors assigned by the plaintiffs that the trial court is not required to make findings that are covered by findings already made in another form or that are argumentative or immaterial. See Cheek v. Radio Station KGFL, 47 N.M. 79, 135 P.2d 510; Sundt v. Tobin Quarries, 50 N.M. 254, 175

P.2d 684; Williams v. Selby, 37 N.M. 474, 24 P.2d 728; Lea County Fair Ass'n v. Elkan, 52 N.M. 250, 197 P.2d 228.

The primary questions presented in this case are whether the defendant violated the forfeiture clause set forth in the deed by using the land for other than "fair purposes" and, if so, whether they are barred now from enforcing the clause because of their delay in complaining about the defendant's action and in standing by while the defendant spent thousands of dollars for improvements on the land, which cannot be removed now except at a tremendous loss.

■■ The plaintiffs' complaint is based primarily upon the fact that they desired what is commonly known as a county fair to be conducted on the premises. However, since the language used in the disputed clause was selected by the plaintiffs and inserted in the deed at their request and since the clause would, if enforced, work a forfeiture it must be construed strictly and most strongly against the plaintiffs. Rowe v. May, 44 N.M. 264, 101 P.2d 391; Berger v. Santa Fe College, 28 N.M. 545, 215 P. 825; Howe v. City of Lowell, 171 Mass. 575, 51 N.E. 536; Williams v. Box Church Baptist Church, Tex.Civ.App., 75 S.W.2d 134. In thus construing the clause, we find that it does not require any affirmative act on the part of the defendant, such as conducting county or other fairs

16

on the premises as desired by the plaintiffs, but merely requires that the premises not be used for any purposes other than "fair purposes." Inasmuch as the evidence shows that since it acquired the land, the defendant has only conducted or permitted to be conducted on the land horse races, a circus, a rodeo, livestock exhibitions and sales, including a quarter horse and bull sale, except on the occasions when the Boy Scouts used it for some of their activities and an Indian dance, we believe that the trial court was correct in concluding that the plaintiffs failed to establish that the defendant had violated the clause by using the land for purposes other than "fair purposes."

However, even assuming that the defendant had violated the forfeiture clause, the plaintiffs would still be barred from recovering in this action because of their unreasonable delay in complaining about the use being made of the property by the defendant during which period they knew that the defendant was spending large sums of money on permanent improvements. The evidence shows that the defendant acquired the Turner Tract in 1944 for the purpose of constructing a race track on it and otherwise using it for fair purposes. Later, it learned that, because of the contour of the land, a suitable race track could not be constructed on the Turner Tract alone and that it would be necessary to acquire the adjoining Morrow

Tract in order to carry out its plans. The defendant then commenced negotiating with the plaintiffs and their agent, James Morrow, for the purchase of the Morrow Tract. The plaintiffs knew that the defendant intended to erect a race track on the land and did not object to it. However, they also wanted the defendant to conduct other activities on the land which are usually considered to be part of a fair. It was for this reason that they insisted that the forefeiture clause prepared by them be inserted in the deed, which conveyed the land to the defendant in 1945. Thereafter, the defendant constructed a race track, grandstand, barns, stables and other miscellaneous buildings and valuable improvements on both tracts and, in addition to the activities mentioned above, it has been conducting horse races thereon each year since 1946. After the land was acquired by it, representatives from the nearby City of Springer contacted the defendant and pointed out that since the Colfax County Fair was being conducted in Springer, they desired the defendant to confine itself to conducting horse races and to drop any plans it had to conduct other fair activities in Raton which would compete with the Springer fair, which the defendant decided to do. Although the plaintiffs had knowledge of all these facts, they waited until June 1949, after the defendant had spent thousands of dollars on improving or placing improvements on the land, before they

made any objection or claim that the forfeiture clause had been violated and demanded that the land be sold to them at a price of $25 per acre. It is well settled that where a person stands by and sees another committing an act which he feels infringes upon his rights and fails to assert his title or right, he will be estopped from afterwards asserting it. La Luz Community Ditch Co. v. Town of Alamogordo, 34 N.M. 127, 279 P. 72. Relief is withheld in such cases because it would be inequitable to grant it. O'Brien v. Wheelock, 184 U.S. 450, 22 S.Ct. 354, 46 L.Ed. 636; Winn v. Shugart, 10 Cir., 112 F.2d 617. Furthermore, the equitable relief of specific performance will not be granted in a case where the result of the specific performance of the contract would be harsh, inequitable, oppressive or unconscionable. See Chaplin v. Korber Realty Inc., 29 N.M. 567, 224 P. 396; 65 A.L.R. at page 58 and 174 A.L.R. at page 713. The existence of laches is a question primarily addressed to the sound descretion of the trial court. Gardner v. Panama R. Co., 342 U.S. 29, 72 S.Ct. 12, 96 L.Ed. 31; Holmberg v. Armbrecht, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743. And, the courts generally apply the doctrine and withhold relief from those who have delayed the assertion of their claims for an unreasonable length of time. What is an unreasonable length of time depends upon the circumstances of the particular case. It is not the mere matter of lapse of time in all cases but the doctrine will be applied where the situation has changed during the neglectful repose in such a way that it would be inequitable to grant relief. See O'Brien v. Wheelock, supra. Also, if a party has knowledge of existing conditions and acquiesces in them, the opposing party is generally justified in assuming that such action constitutes an implied waiver of the right. Pratt v. Parker, 57 N.M. 103, 255 P.2d 311; Yates v. American Republics Corp., 10 Cir., 163 F.2d 178; 1 Simes Future Interests 307, Section 170.

Under the facts of this case, the trial court was correct in denying the relief requested by the plaintiffs.

The judgment of the trial court is affirmed.

COMPTON, LUJAN and SEYMOUR, JJ., concur.

SADLER, C. J., not participating.

McGHEE, Justice (dissenting).

I do not believe the evidence in this case supports the decree denying relief to the appellants, and I therefore dissent.